IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANTHONY A. MOORE,**

    Plaintiff,

    vs.                                    No. **CIV 02-1445 MCA/LAM**

**JUAN HERNANDEZ, ROBERT JONES,
BERNICE MONTOYA**, **DONA ANA COUNTY,**
and Unknown **DOES 1-10,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the *Motion for Summary Judgment by Defendants Juan Hernandez, Robert Jones and Bernice Montoya* [Doc. No. 50] and the *Motion for Summary Judgment by Defendant Dona Ana County* [Doc. No. 82]. Having considered the parties' submissions, the relevant law, and being fully advised in the premises, the Court determines that there are no genuine issues of material fact and that all Defendants are entitled to summary judgment as a matter of law. Therefore, Defendants' motions are granted and this action is dismissed with prejudice.

**I.**     **BACKGROUND**

On November 15, 2002, Plaintiff Anthony A. Moore filed this civil action claiming that Defendants deprived him of his property without due process of law. Plaintiff's due-

process claim arises from the circumstances under which he ended his employment as an officer of the Dona Ana County Sheriff's Department in November 1999. [Doc. No. 1.]

Defendants Dona Ana County, Juan Hernandez, Robert Jones, and Bernice Montoya moved for summary judgment with supporting affidavits, excerpts from Plaintiff's deposition transcript, and other evidentiary materials pursuant to Fed. R. Civ. P. 56(b) and (e). [Doc. No. 51, 52, 53, 54.] Plaintiff did not provide any affidavits or evidentiary materials with his responses to these motions, except for a copy of *Defendant's Initial Disclosures* pursuant to Fed. R. Civ. P. 26(a)(1). [Doc. No. 67, 93.]

With their reply brief, Defendants Hernandez, Jones, and Montoya (collectively "the individual Defendants") submitted additional excerpts from Plaintiff's deposition testimony, along with a copy of the Dona Ana County Personnel Ordinance and Personnel Rules and Regulations. [Doc. No. 76.] Another affidavit was filed after the completion of briefing on the individual Defendants' summary-judgment motion. [Doc. No. 80, 81.]

In his response brief, Plaintiff objected to portions of the individual Defendants' affidavits [Doc. No. 52, 53, 54] on the grounds that they refer to certain documents which are not "attached thereto" as required by Fed. R. Civ. P. 56(e). [Doc. No. 67, at 4-5.] Plaintiff also filed a *Request that the Court Disregard New Evidence in Summary Judgment Reply Brief, or Alternatively, to Allow Plaintiff to File a Surreply.* [Doc. No. 89.] Plaintiff did not attach a proposed surreply to his request.

The undisputed facts and evidence submitted with the briefs on Defendants' summary-judgment motions can be summarized as follows. Plaintiff began his employment

as a sheriff's deputy with the Dona Ana County Sheriff's Department in 1997. [Doc. No. 51, Ex. A, at 4.] In that year, Plaintiff signed a form acknowledging that he received a copy of the County's "Personnel Ordinance No. 107-92; Rules and Regulations" and accepted responsibility for reviewing and complying with its contents. [Doc. No. 83, Ex. D.]

In 1998, Plaintiff was suspended without pay for a number of days as a result of some "employment problems" with the Dona Ana County Sheriff's Department relating to the procedure he used when stopping a person for driving under the influence. Regarding these problems, Plaintiff availed himself of the County's grievance procedure and was assisted by a union representative. [Moore Dep. at 66-69; Hernandez Aff. ¶ 2.]

In November 1999, Plaintiff was arrested pursuant to one or more warrants issued by the El Paso Police Department. After his arrest, he was taken to a jail in El Paso County, Texas, where he was detained on criminal charges. The arresting officers allowed Plaintiff to call his attorney before taking him to jail. Plaintiff was read his rights by the El Paso police, and then he gave a statement to Defendant Jones in accordance with Garrity v. New Jersey, 385 U.S. 493 (1967).[1] [Moore Dep. at 17-18, 37-40, 105-07, 123; Hernandez Aff. ¶ 3; Jones Aff. ¶ 3.]

---

[1] Under Garrity and its progeny, "a police officer may be terminated for refusing to answer questions 'specifically, directly, and narrowly relating to the performance of his official duties,' so long as he is not 'required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself.'" In re Grand Jury Subpoenas, 40 F.3d 1096, 1101-1102 (10th Cir. 1994) (quoting Gardner v. Broderick, 392 U.S. 273, 278 (1968)).

Based on Plaintiff's arrest on the El Paso warrant, Defendant Hernandez also filed an officer misconduct report with the New Mexico Department of Public Safety. Defendant Hernandez's report could have resulted in the cancellation of Plaintiff's law enforcement certification. That result was never reached, however, because the report filed by Defendant Hernandez was never acted upon. [Hernandez Aff. ¶ 12; Doc. No. 51, Ex. A, at 8.]

On November 18, 1999, after being detained in the El Paso County jail for "a long time" (during which Plaintiff was absent from work), Plaintiff met with the individual Defendants in a conference room at the jail regarding his employment with Dona Ana County. [Doc. No. 67, at 3; Moore Dep. at 17-18.] At the meeting, Defendant Jones accused Plaintiff of being guilty of the criminal charges and argued with Plaintiff. After this argument, Defendant Jones left the room. [Doc. No. 51, Ex. A, at 8; Jones Aff. ¶¶ 6, 9; Montoya Aff. ¶ 3.]

Plaintiff then discussed the topic of resignation with Defendants Hernandez and Montoya. According to Defendants Hernandez and Montoya, it was Plaintiff who suggested that he resign in lieu of going through a pre-termination hearing, and it was Plaintiff who questioned Defendant Montoya about the procedural aspects of his resignation, such as calculation of accrued vacation and sick leave, taking monies out of his retirement account, and receipt of his final paycheck. [Hernandez Aff. ¶¶ 7, 11; Montoya Aff. ¶¶ 4-6; Jones Aff. ¶ 7.]

According to the individual Defendants, Plaintiff appeared to be healthy, coherent, and logical during the meeting on November 18, 1999. [Hernandez Aff. ¶ 9; Montoya Aff.

¶ 7; Jones Aff. ¶ 9.] He wrote out and signed his own resignation letter making his resignation effective on November 20, 1999. He also signed a form entitled "Waiver of 'Due Process of Law' Rights." [Ex. 1, 2 to Hernandez, Aff.]

Plaintiff tells a different story. He claims that the individual Defendants forced him to resign by threatening to fire him and/or withhold his paycheck unless he signed the paperwork they presented to him. Plaintiff also claims that he was ill and distraught at the time of the meeting, in part because of a concern that his newborn baby (and other family members) would go hungry if his paycheck was not delivered to his girlfriend. [Doc. No. 51, Ex. A, at 8; Moore Dep. at 19.]

A few days after his meeting with the individual Defendants, Plaintiff posted bail and was released from the El Paso County jail. Upon returning to the residence where he was staying, Plaintiff claims he found a "pink slip" from Defendant Dona Ana County, which his girlfriend later destroyed. [Moore Dep. at 117-20.] By the time of his release from the jail, Plaintiff had retained an attorney to defend him on the criminal charges and received financial assistance from his family. [Moore Dep. at 121-24.] There is no evidence in the record, however, that Plaintiff ever notified Defendants that he was withdrawing his resignation letter, nor is there any evidence in the record that he pursued any post-termination grievance procedure (such as that provided in the Dona Ana County Personnel Ordinance and Personnel Rules and Regulations) prior to filing this civil action. [Hernandez Aff. ¶ 11; Doc. No. 83, Ex. C.]

## II. ANALYSIS

### A. Standard of Review

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671-72 (10th Cir. 1998).

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct. See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity. See id. at 1156. If the plaintiff does establish the violation of a clearly-established constitutional or statutory right, then (for purposes of

the defendant's summary-judgment motion) the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. See id.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. Thus, the Court only considers affidavits that set forth facts "based on personal knowledge" which "would be admissible in evidence; conclusory and self-serving affidavits are not sufficient" to defeat or support a motion for summary judgment. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). Similarly, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995). The Court may, however, consider admissions by a party opponent, see Fed. R. Evid. 801(d)(2), statements admissible for the limited purpose of showing their effect on the listener, see Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993), statements which constitute verbal acts or operative facts because legal consequences flow from their utterance, see Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001), and other statements which fall under an exception to the hearsay rule, see, e.g., Fed. R. Evid. 803(3) (allowing for consideration of statements as circumstantial proof of the knowledge, intent, or state of mind of the declarant).

In this case, Plaintiff has requested that the additional materials attached to the individual Defendants' reply brief, as well as certain portions of the individual Defendants'

affidavits, be excluded from the Court's consideration. [Doc. No. 67, at 4-5; Doc. No. 89.] In accordance with the relevant law, the Court will disregard the additional materials attached to the individual Defendants' reply brief, except for the Dona Ana Personnel Ordinance and Rules and Regulations. The ordinance and rules and regulations are properly before the Court because they were also submitted with Defendant Dona Ana County's opening brief in support of its summary-judgment motion [Doc. No. 83], to which Plaintiff had an opportunity to respond [Doc. No. 93]. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1163-65 (10th Cir. 1998). The Court also will limit its consideration of the individual Defendants' affidavits to those portions which are in compliance with Fed. R. Civ. P. 56(e). See Lozano v. Ashcroft, 258 F.3d 1160, 1166 (10th Cir. 2001) (refusing to consider declaration that was based on hearsay rather than personal knowledge and did not attach copies of records referenced therein).

Apart from these limitations imposed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B. Plaintiffs' Due Process Claim

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, which provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Persons sued in their individual capacity under this civil-rights statute generally are entitled to qualified immunity unless it is shown that their actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue. See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

Because 42 U.S.C. § 1983 is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere, the analysis of Plaintiffs' federal civil-rights claim necessarily begins by identifying the specific constitutional right which Defendants are alleged to have violated. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Reno v. Flores, 507 U.S. 292, 302 (1993). Alleged violations

of a state law or a county ordinance cannot, standing alone, form the basis for a claim under 42 U.S.C. § 1983. See Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988). Thus, the Court limits its analysis to Plaintiff's assertion that Defendants violated the Fourteenth Amendment of the United States Constitution by depriving him of his employment "without due process of law." U.S. Const. amend XIV.

The concept of due process includes both procedural and substantive components. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000). In this case, Defendants have presented reasons for ending Plaintiff's employment as a law enforcement officer that are not "arbitrary" within the meaning of the Supreme Court's jurisprudence on substantive due process. Cf. Gilbert v. Homar, 520 U.S. 924, 934 (1997) (quoting FDIC v. Mallen, 486 U.S. 230, 244 (1988), for the proposition that "the arrest and formal charges imposed upon [an individual] 'by an independent body demonstrat[e] that the suspension is not arbitrary'"); Herrera v. City of Albuquerque, 198 F.3d 258, 1999 WL 815815, at *2 (10th Cir. Oct. 13, 1999) (unpublished order and judgment rejecting a substantive due-process claim in a public employment context). Accordingly, the Court further limits its analysis to the issue of procedural due process.

### 1. **Whether Plaintiff Was Deprived of a Protectible Property Interest**

To prevail on his procedural due-process claim under 42 U.S.C. § 1983, Plaintiff must first establish that state action deprived him of "a protectible property interest." Hyde Park Co., 226 F.3d at 1210. If Plaintiff "resigned of h[is] own free will, even though doing so due to actions of [D]efendants, [h]e voluntarily relinquished h[is] property interest" in continued employment as a law enforcement officer, and was not deprived of that interest by state action. Parker v. Bd. of Regents of the Tulsa Junior Coll., 981 F.2d 1159, 1162 (10th Cir. 1992); accord Cacy v. City of Chickasha, 124 F.3d 216, 1997 WL 537864, at *6 (10th Cir. Sept. 2, 1997) (unpublished order and judgment). On the other hand, a resignation that "is so involuntary it amounted to a constructive discharge" may qualify as a deprivation of a protectible property interest. Parker, 981 F.2d at 1162.

To determine whether Plaintiff's resignation was involuntary and coerced, the Court must consider the totality of the circumstances presented by the undisputed facts and admissible evidence of record in this case. See id. The following factors are particularly relevant to this inquiry: "'(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation.'" Id. (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988)); accord Cacy, 124 F.3d 216, 1997 WL 537864, at *6.

In this case, Plaintiff sharply disputes Defendants' contention that it was his idea to resign. This fact is not dispositive, however, because an employee's resignation may be voluntary even when it is prompted by the actions of his employer. See Parker, 981 F.2d at 1162. The question is whether the circumstances of the resignation were so "egregious" as to amount to a "constructive discharge." Cacy, 124 F.3d 216, 1997 WL 537864, at *8.

Even when viewed in the light most favorable to Plaintiff, the evidence of record does not support a reasonable inference that he was subjected to such a constructive discharge. According to Plaintiff's deposition testimony, he understood that he had to choose between tendering his resignation and being terminated in a manner that would delay or preclude timely receipt of his final paycheck. [Moore Dep. at 65, 71-72.] Thus, he was given an alternative to resignation but declined to select that alternative based on his financial concerns about not receiving his paycheck promptly. Plaintiff also acknowledged in his deposition testimony that he understood resignation to have a less harmful effect on his future employment prospects than a termination. [Moore Dep. at 81-83.]

"A choice between resignation or termination does not establish that the resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination." Parker, 981 F.2d at 1162. In this case, Defendants had good cause to believe that there were grounds for termination based on the criminal charges that were pending at the time, Plaintiff's unexcused absence from work for several days, and the fact that this incident was not the first of his employment problems. Cf. Gilbert, 520 U.S. at 932 (recognizing the State's significant "interest in immediately suspending, when felony charges

are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers").

Further, the evidence of record indicates that, at the meeting with the individual Defendants on November 18, 1999, Plaintiff wrote out and signed his own resignation letter, with an effective date of November 20, 1999. [Moore Dep. at 70-71; Ex. 1 to Hernandez Aff.] Thus, Plaintiff either selected the date of his own resignation, or was given a date that gave him a reasonable amount of time (two days) to consult his attorneys and reconsider the matter before his resignation became effective.

Under the totality of the circumstances, the Court concludes that Plaintiff's resignation was voluntary, and therefore he was not deprived of his property interest in continued employment as a law enforcement officer. See Parker, 981 F.2d at 1162. To the extent that the individual Defendants were mistaken in believing that Plaintiff had resigned voluntarily, such a mistake was a reasonable one in light of the fact that Plaintiff signed his resignation letter in their presence (as well as the form entitled "Waiver of 'Due Process of Law' Rights"), and never notified them of his intent to withdraw his resignation and waiver in a timely manner. Such a reasonable mistake, combined with the absence of clearly established law to the contrary, entitles each of the individual Defendants to qualified immunity. See Parker, 981 F.2d at 1163; cf. Cacy, 124 F.3d 216, 1997 WL 537864, at *8 (distinguishing constructive-discharge cases brought under 42 U.S.C. § 1983 in the public employment context from those alleging sex, age, or disability discrimination by a private employer under state contract law, Title VII, and the ADEA).

## 2. **Whether Plaintiff Was Afforded Due Process**

In the alternative, the Court concludes that Plaintiff was afforded all the process that he was due under the Fourteenth Amendment with respect to the loss of his employment. The general rule is that the Due Process Clause requires some kind of hearing prior to the deprivation of a significant property interest in continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). This general rule is not absolute, however, because "[i]t is by now well established that 'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" See Gilbert, 520 U.S. at 930 (quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895 (1961)).

Thus, "[t]he due process clause does not require an elaborate or formal pretermination hearing." Herrera, 198 F.3d 258, 1999 WL 815815, at *1 (citing Loudermill, 470 U.S. at 545-56, and Gilbert, 520 U.S. at 929). Moreover, there are exceptions in which no pre-deprivation hearing is required, or pre-deprivation procedural protections can be pared down or abbreviated. See generally Gilbert, 520 U.S. at 930 (collecting cases). For example, "where the state is confronted with an emergency, it may deprive an individual of his or her property without first providing a hearing." Miller v. Campbell County, 945 F.2d 348, 353 (10th Cir. 1991). Similarly, there are circumstances in which a predeprivation hearing may be limited to oral notice and a brief opportunity to respond at the time the notice is given. See Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989). These exceptions reflect the view that due process is a "flexible" concept that only "calls for such procedural

protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

To determine what process is due in a particular situation, courts strive to reach an appropriate balance among the following factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Under the particular circumstances of this case, the balancing of these factors does not weigh in Plaintiff's favor. While courts have recognized "the severity of depriving someone of the means of his livelihood, they have also emphasized that in determining what process is due, account must be taken of 'the *length*' and '*finality* of the deprivation." Gilbert, 520 U.S. at 932 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982)) (citations omitted). In this case, the severity of the alleged deprivation was reduced by the fact that it was treated as a resignation, which Plaintiff understood to have a lesser impact on his ability to obtain other employment in the future. Further, as previously noted, the State's interest in ending a law enforcement officer's employment in this way carries more weight when criminal charges are pending against the officer. See Gilbert, 520 U.S. at 933 (noting, among other things, the State's "interest in preserving public confidence in its police force").

With respect to the risk of erroneous deprivation and the likely value of additional procedures, the Supreme Court has held that the "arrest and the filing of the criminal charges" by an "'independent body'" serves the same purpose as a pre-termination hearing, *i.e.*, to determine "'whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Gilbert, 520 U.S. at 933-34 (quoting Mallen, 486 U.S. at 244, and Loudermill, 470 U.S. at 545-46). In this case, Plaintiff makes several conclusory allegations that the criminal charges against him were false, but he has provided no evidence that he was deprived of notice and an opportunity to be heard in the criminal proceedings that preceded his alleged termination.[2]

In addition to the process afforded in the criminal proceedings, Plaintiff was given the opportunity to tell his side of the story when he gave a Garrity statement to Defendant Jones and when he later argued with Defendant Jones about the Garrity statement prior to his resignation at the meeting on November 18, 1999. This series of measures indicates that there was some degree of predeprivation notice and opportunity to be heard in this case. Such measures served as "'an initial check against mistaken decisions'" and had the effect

---

[2]Although the criminal charges eventually were dismissed after Plaintiff's employment ended, the ultimate disposition of those charges has no preclusive effect on the employment decision which is the subject of this civil action. In addition to the obvious differences in the burden of proof for each proceeding, there is no evidence that the Defendants in this case were in privity with the Texas authorities responsible for bringing the criminal charges against Plaintiff. See generally Kinslow v. Ratzlaff, 158 F.3d 1104, 1106 (10th Cir. 1998) (discussing requirements for giving preclusive effect to the result of a prior criminal proceeding in a civil action brought under 42 U.S.C. § 1983).

of reducing the risk of an erroneous deprivation of Plaintiff's property interests. Powell, 891 F.2d at 1458 (quoting Loudermill, 470 U.S. at 545); see Miller, 945 F.2d at 354.

In light of the process already afforded in the criminal proceedings and in Plaintiff's prior conversations with Defendant Jones, the probable value, if any, of providing additional or substitute procedural safeguards before discussing the topic of resignation was minimal. The Fourteenth Amendment does not require that pre-termination procedures duplicate the more extensive post-deprivation remedies available under Defendant Dona Ana County's personnel ordinance and regulations. See Powell, 891 F.2d at 1458. Further, Defendants are "not responsible for the denial of a post-termination hearing because such a hearing was not requested." Herrera, 198 F.3d 258, 1999 WL 815815, at *2.

For these reasons, the Court concludes that Plaintiff was afforded the process that was due to him under the Fourteenth Amendment. As there was no clearly established law to the effect that the Fourteenth Amendment requires additional process in this type of situation, the individual Defendants are entitled to qualified immunity with respect to Plaintiffs' procedural due process claims under 42 U.S.C. § 1983. See Powell, 891 F.2d at 1462-63.

The Court's disposition of Plaintiff's claim against the individual Defendants precludes him from pursuing the same claim against Defendant Dona Ana County. Absent a showing that one or more of the individual Defendants violated Plaintiff's constitutional right to due process, there can be no municipal liability for their actions in this instance. See Trigalet v. City of Tulsa, 239 F.3d 1150, 1156 (10th Cir. 2001). Finally, Plaintiff is deemed to have abandoned any other claims stated or implied in his *Complaint*, including his claims

against the Does 1 through 10. See generally Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1031 (4th Cir. 1994).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

**IT IS THEREFORE ORDERED** that the *Motion for Summary Judgment by Defendants Juan Hernandez, Robert Jones and Bernice Montoya* [Doc. No. 50] is **GRANTED**.

**IT IS FURTHER ORDERED** that the *Motion for Summary Judgment by Defendant Dona Ana County* [Doc. No. 82] is **GRANTED**.

**IT IS FURTHER ORDERED** that the pretrial conference scheduled for Tuesday, May 4, 2004, and the jury selection/trial scheduled for June 15, 2004, are **VACATED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED,** this 27th day of April, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge